DONVITO, APPELLANT, *v.*
CRISWELL ET AL., APPELLEES.

(No. 10340—Decided February 24, 1982.)

*Paul K. Christoff Co., L.P.A., and Mr. Paul K. Christoff,* for appellant.

*Mr. William P. Holder, Jr.,* for appellees.

MAHONEY, J. John A. Donvito appeals the trial court's judgment that the real property held by appellees Barbara A. and William H. Criswell, as tenants by the entireties, was not subject to the individual debt which William Criswell owed to Donvito. We affirm.

### Facts

Donvito and William Criswell (William) were personally acquainted from

their mutual employment at Cer-Mar Systems, Inc. (Cer-Mar). On July 1, 1975, William purchased stock in Cer-Mar from Donvito in exchange for William's promissory note in the amount of $89,000, payable to Donvito. On October 5, 1978, Donvito obtained a judgment against William on the unpaid balance of the note, which, according to a December 29, 1978 *nunc pro tunc entry,* amounted to $43,553.28.

William and Barbara Criswell were married on May 8, 1976. On April 17, 1978, they purchased a home at 700 Southwood Drive, Green Township, Ohio. The title to this real estate was conveyed by a deed creating an estate by the entireties in William and Barbara Criswell, husband and wife, as provided for in R.C. 5302.17. On June 21, 1978, William, on the advice of counsel, executed a quitclaim deed to Barbara, conveying his interest in the entireties property, for the stated consideration of $10.

On the basis of his October 5, 1978 judgment, Donvito filed the present action seeking to set aside the June 21, 1978 conveyance from William to Barbara as fraudulent and to declare the Criswells' home subject to the payment of his judgment. The trial court found that, pursuant to R.C. 5302.17, the deed conveying the real property known as 700 Southwood Drive to the Criswells created an estate by the entireties. Accordingly, the court found that the creditor of one spouse could not reach property held as an estate by the entirety during the spouses' joint lives. The trial court also concluded that the quitclaim deed from William to Barbara had no legal effect on Donvito's ability to collect on the debt and, therefore, dismissed Donvito's action.

### Assignments of Error Nos. II and III

"II. The court erred in ruling O.R.C. Section 5302.17 a true estate by the entirety instead of it being a joint tenancy with right of survivorship.

"III. The court erred in ruling that the creditor of one spouse cannot reach the property held in an estate by the entireties created under O.R.C. 5302.17 during the married persons' joint lives."

We are faced in this case with the necessity of interpreting R.C. 5302.17, which provides, in pertinent part:

"A deed conveying any interest in real property to a husband and wife, and in substance following the form set forth in this section, when duly executed in accordance with Chapter 5301 of the Revised Code, creates an estate by the entireties in the grantees, and upon the death of either, conveys such interest to the survivor, his or her separate heirs and assigns."

The statute includes a sample deed which provides that the property is granted to the named parties as "* * * husband and wife, for their joint lives, remainder to the survivor of them * * *." It also provides for creation of an estate by the entireties by deed where one (or both) of the spouses is the sole owner of the real property in a form other than as tenants by the entireties. Under R.C. 5302.17, an entireties estate can only be created by deed and is limited to interests in real property held by husband and wife.

Prior to the passage of R.C. 5302.17, an estate by the entireties did not exist in Ohio. In *Sergeant* v. *Steinberger* (1826), 2 Ohio 305, the Ohio Supreme Court denounced any form of survivorship, including that involving husband and wife in the entirety, as adverse to public policy. Though recognizing that common law joint tenancy with right to survivorship does not exist in Ohio, the case of *In re Estate of Hutchison* (1929), 120 Ohio St. 542, held that parties could contract for a joint ownership with right of survivorship where the intent to create such right is clearly expressed. This rule prevailed in Ohio as the only form of joint ownership until the passage of R.C. 5302.17, effective February 9, 1972. There is a void, however, of any published cases in Ohio which attempt to explain the nature and

extent of an estate by the entireties created under R.C. 5302.17.

The common law required the concurrence of the five unities of time, title, interest, possession and person in order to create an estate by the entireties.[1] The unity of person, unique to this tenancy, limits estates by the entireties to devises or conveyances to a husband and wife. Similar to joint tenants, each tenant by the entirety is vested with a right of survivorship. However, unlike a joint tenancy, the husband and wife in an estate by the entireties hold the property as a single entity and thus are seized *per tout et non per my* (seized of the whole but not of a share). Therefore, "* * * the whole estate held by the husband and wife continues in the surviving spouse, not because he or she is vested with any new interest, but because each originally took the whole or entirety to continue to the survivor. * * *" Magee, Tenancy by the Entirety: Ohio's New Estate (1974), 2 N. Ky. St. L. Forum 69, at page 73.

Joint tenants are seized *per my et per tout* (of a share and of the whole) and thus each tenant possesses an individual interest in the property which allows the tenant to freely alienate his or her interest, thereby severing the tenancy. At common law, tenants by the entireties possessed no individual interests in the entirety property and, therefore, neither spouse could alienate or sever the tenancy by his or her singular act.

Under traditional common law, the husband constituted the entity of the tenancy by the entireties since he had control over the property without the wife's consent. This situation changed as a result of the passage of Married Women's Property Acts in the late nineteenth cen-

tury. Thus, some courts held that the recognition of a wife's legal rights in property abolished tenancies by entireties, presumably on the theory that the unity of person had been destroyed. See Yzenbaard, Ohio's Beleaguered Entirety Statute (1980), 49 Univ. Cin. L. Rev. 99, 101, at footnotes 16 and 17. However, the majority of states interpreted the Married Women's Property Acts as equalizing the rights between spouses in an entirety estate. *Id.* We conclude that Ohio follows this interpretation of the Acts. In support of this conclusion we refer to *Smiley* v. *Smiley's Admr.* (1869), 18 Ohio St. 543, 544, where the court stated:

"* * * It was not intended by the act to create for her [the wife] new rights, but simply to take away the husband's control over such as she had."

In the present case, Donvito insists that the Ohio legislature intended to create a statutory form for the judicially recognized survivorship deed and did not intend to resurrect the common law estate by the entireties. We find his reasoning unpersuasive. He relies in part on the statement, included in H. B. No. 878 when originally introduced in the Ohio House of Representatives, to the effect that the statute would "* * * create a statutory deed form for joint tenancy with survivorship." See 134 Ohio House Journal (Part I), 347-348 (April 13, 1971).

However, the House substantially amended H. B. No. 878 prior to its passage and removed all references to joint tenancy, substituting instead the words "estate by the entireties." See 134 Ohio House Journal (Part I), 737 (July 14, 1971). This explicit modification negates any notion that R.C. 5302.17, as enacted,

---

[1] See, generally, for explanation of the attributes of a tenancy by the entirety: 41 American Jurisprudence 2d 58 *et seq.,* Husband and Wife, Section 55 *et seq.;* Magee, Tenancy by the Entirety: Ohio's New Estate (1974), 2 N. Ky. St. L. Forum 69; Comment, The Ohio Entirety Estate: Alternative Approaches to Anticipated Problems (1979), 4 Univ. Dayton L. Rev. 425; Yzenbaard, Ohio's Beleaguered Entirety Statute (1980), 49 Univ. Cin. L. Rev. 99; 4A Powell, The Law of Real Property, Section 620 *et seq.*

conformed to the intent originally expressed. The conscious use of the term "estate by the entireties" evidences an intent to statutorily create a unique common law estate previously abolished in Ohio. Absent a contrary intent in the language we will give the words of the statute their face value.

Donvito further argues, in line with at least two law review articles, that certain language employed in R.C. 5302.17 is inconsistent with the common law estate by the entirety. See Magee, *supra,* at page 82; Comment, The Ohio Entirety Estate: Alternative Approaches to Anticipated Problems (1979), 4 Univ. Dayton L. Rev. 425, at pages 432-433. Donvito, thus, challenges the use of the word "entireties" instead of "entirety," suggesting that "entireties" indicates multiple interests in the estate rather than the single interest of the husband-wife entity. Although the word "entirety" might be intellectually preferable to "entireties," the two words are used interchangeably in the literature, in the case law and in the statutes of other states when referring to the tenancy at issue herein.

Donvito also questions the use, in R.C. 5302.17, of the phrases "conveys such interest to the survivor," "remainder to the survivor," and "vests in a surviving spouse." He claims that since both spouses are vested with the entire estate from its inception, there is nothing to vest upon one spouse's death, *i.e.,* R.C. 5302.17 is, thus, inconsistent with common law entirety survivorship theory. His statement is technically correct; however, we do not adopt his interpretation of the effect of employing the above language. "* * * [C]ommon-law words in a statute should generally be construed according to their significance at common law. * * *" (Footnote omitted.) 50 Ohio Jurisprudence 2d 181, Statutes, Section 202. Therefore, we conclude that the above noted phrases do not express a legislative intent to create a joint tenancy

with right of survivorship. This is especially true where the legislature amended the statute, prior to enactment, to remove any reference to joint tenancy and inserted the words "estate by the entireties." As presently constituted, we hold that, in enacting R.C. 5302.17, the General Assembly intended to create the estate known at common law as an estate by the entirety.

The significance of the above holding, regarding R.C. 5302.17, lies in the effect that the creation of an estate by the entireties has on creditor's rights. Consequently, the primary issue here concerns whether property held as an estate by the entireties is immune from the claims of the creditors of only one spouse.

There is no question that entirety property would be subject to a debt jointly incurred by husband and wife. However, in the case before us we are faced with a debt which William Criswell personally incurred approximately 10 months prior to marrying Barbara Criswell on May 8, 1976. There is no evidence to indicate that Barbara acknowledged the debt. The grantors executed the deed creating the estate by the entireties in William and Barbara Criswell, husband and wife, on April 17, 1978, and Donvito obtained the judgment for the balance due on the promissory note from William on October 5, 1978. This is the judgment which Donvito now attempts to satisfy by execution on the Criswells' entirety property.

Twenty-five jurisdictions, in addition to Ohio, recognize a tenancy by the entirety in some form. The majority view provides that neither spouse can alienate entirety property without the other's consent. Thus, a creditor of one spouse cannot reach the debtor-spouse's interest in the estate nor levy upon the entirety property. Twelve jurisdictions adhere to this interpretation: *Citizens Savings Bank, Inc.,* v. *Astrin* (1948), 44 Del. 451, 61 A. 2d 419; *In re Estate of Wall* (C.A.D.C., 1971), 440 F. 2d 215; *Hunt* v. *Covington*

(1941), 145 Fla. 706, 200 So. 76; *Sawada v. Endo* (1977), 57 Hawaii 608, 561 P. 2d 1291; *Myler* v. *Myler* (1965), 137 Ind. App. 605, 210 N.E. 2d 446; *Watterson* v. *Edgerly* (1978), 40 Md. App. 230, 388 A. 2d 934; *Otto F. Stifel's Union Brewing Co.* v. *Saxy* (1918), 273 Mo. 159, 201 S.W. 67; *Stauffer* v. *Stauffer* (1976), 465 Pa. 558, 351 A. 2d 236; *Bloomfield* v. *Brown* (1942), 67 R.I. 452, 25 A. 2d 354; *Rose* v. *Morrell* (1969), 128 Vt. 110, 259 A. 2d 8; *Vasilion* v. *Vasilion* (1951), 192 Va. 735, 66 S.E. 2d 599; *Ward Terry & Co.* v. *Hensen* (1956), 75 Wyo. 444, 297 P. 2d 213.

We are persuaded by the majority position and, therefore, hold that, as presently constituted in Ohio, an estate by the entireties prevents the creditor of only one spouse from attaching that spouse's interest in the estate or from levying on the tenancy property. The rationale behind this viewpoint, which is well stated by the court in *Sawada* v. *Endo, supra,* is that this view best protects the family unit. Since the creation of an estate by the entireties in Ohio is limited to real property, the immunity to individual creditor's claims will most often inure to the benefit of a family and enable it to retain the family home. During the joint lives of the spouses, the tenancy property will always be available in its entirety for the use and benefit of the entire family. *Sawada* v. *Endo, supra,* 57 Hawaii, at 616-617, 561 P. 2d, at 1297.

In addition to the public policy arguments raised above, the position taken in this opinion is reflective of a tenancy by the entireties as created and sanctioned by R.C. 5302.17 and as that term was understood at common law. Along with the majority of jurisdictions, we conclude that Ohio recognizes the immunity of an estate by the entireties from one spouse's creditors. Therefore, Donvito could not attempt to satisfy his claim against William Criswell by execution on the Criswells' entirety property during the Criswells' joint lives.

*Assignments of Error Nos. I and IV*

"I. The court erred in not issuing a definite ruling that the transfer of real property from William H. Criswell to Barbara A. Criswell was a fraudulent conveyance in violation of Chapter 1336 of the Revised Code of Ohio.

"IV. The court erred in ruling that the transfer by quit-claim deed from William to Barbara Criswell had no legal effect upon the right of plaintiff-appellant to reach the property in question."

Donvito suggests that the quitclaim deed from William to Barbara Criswell, which purported to convey William's entire interest in the entirety property to Barbara, amounted to a fraudulent conveyance. Donvito claims that William violated R.C. Chapter 1336 because the deed was executed to avoid and defraud Donvito as a creditor. Assuming, *arguendo,* that the quitclaim deed at issue here constituted a fraudulent conveyance, Donvito would have no better right to execute on the Criswells' home for the following reason:

"Property fraudulently conveyed * * * may be attached, is subject to the lien of a judgment and the levy of execution, and in every way is liable to be appropriated to the payment of the creditors, *in the same manner as if no conveyance had been made. * * *"* (Footnotes omitted and emphasis added.) 24 Ohio Jurisprudence 3d, 533-534, Creditors' Rights, Section 857.

The Criswells held the Southwood Drive property as tenants by the entireties prior to William's quitclaim deed to Barbara. Therefore, even if the quitclaim deed were to be declared void, the Criswells would still be considered tenants by the entireties and the property would be immune from Donvito's claim. Cf. *Stauffer* v. *Stauffer, supra,* 465 Pa., at 576, 351 A. 2d, at 245 (even where fraudulent intent was evident, con-

veyance was held not to be fraudulent as to creditor who could not have reached the property before the conveyance).

However, under existing case law in jurisdictions which recognize an estate by the entireties, the conveyance accomplished by William's deed to Barbara was *not* fraudulent. It is clear that, with a tenancy by the entireties, husband and wife, together, can convey the entirety property to a third party, free and clear of the claim of a creditor of *one* of the spouses. *Sawada* v. *Endo, supra; Stauffer* v. *Stauffer, supra;* and *Watterson* v. *Edgerly, supra.* It has also been held "* * * that a husband or wife may convey his or her interest in tenants by the entirety property to the other spouse, without consideration and for the purpose of preventing the enforcement of a judgment against the grantor.* * *" *Watterson* v. *Edgerly, supra,* 40 Md. App., at 237-238, 388 A. 2d, at 939. A similar conveyance has been recognized in the following cases: *Hunt* v. *Covington, supra; L. & M. Gas Co.* v. *Leggett* (1968), 273 N.C. 547, 161 S.E. 2d 23; *Runco* v. *Ostroski* (1949), 361 Pa. 593, 65 A. 2d 399 (where $3,000 in consideration was paid); *Vasilion* v. *Vasilion, supra.* See, also, 41 American Jurisprudence 2d 216, Husband and Wife, Section 260.

The *mutual assent* usually necessary to alienate entirety property *can be implied* from the grantee-spouse's acceptance of the conveyance. *Hunt* v. *Covington, supra,* 145 Fla., at 707-708, 200 So., at 77; *Runco* v. *Ostroski, supra,* 361 Pa., at 597-598, 65 A. 2d, at 401. Thus, a conveyance from one spouse to the other, of his or her interest in the tenancy, is upheld because it is a valid exercise of the right of both spouses to mutually alienate entirety property without being subject to either spouse's debts. *Hunt* v. *Covington, supra,* 145 Fla., at 707-708, 200 So., at 77; *Runco* v. *Ostroski, supra,* 361 Pa., at 597-598, 65 A. 2d, at 401. Consequently, a conveyance from William to Barbara Cris-

well is not fraudulent as to William's creditor, Donvito. *Vasilion* v. *Vasilion, supra,* 192 Va., at 743, 66 S.E. 2d, at 604; *L. & M. Gas Co.* v. *Leggett, supra.*

We note, however, that a tenancy by the entireties cannot be originally created to defraud existing creditors. *Sawada* v. *Endo, supra,* 57 Hawaii, at 616, 561 P. 2d, at 1297; *Myler* v. *Myler, supra,* 137 Ind. App., at 609, 210 N.E. 2d, at 448. However, there has been no suggestion by Donvito, nor is there any evidence in the record, indicating that the original conveyance, which created an estate by the entireties in William and Barbara Criswell, defrauded existing creditors such as Donvito. Therefore, there is no theory under which Donvito can reach the property originally held by the Criswells as tenants by the entireties.

A question remains as to what the deed from William to Barbara actually accomplished. As indicated above, we find the deed from husband to wife in this case to be a valid and permissible conveyance with legal effect. Having recognized the validity of an interspousal conveyance involving entirety property, we conclude that such a conveyance works to terminate the estate by the entireties and vests the grantee-spouse with the unqualified fee simple estate. *Hunt* v. *Covington, supra.* The form of the deed manifests an intent to jointly and voluntarily partition the entirety estate. This result is not affected by the continuance of the marriage relationship between grantor and grantee. *Runco* v. *Ostroski, supra.* We find that the quitclaim deed, executed on June 21, 1978, and conveying William Criswell's interest in property held as an estate by the entireties to his wife Barbara, effectively terminated the tenancy and vested Barbara with the whole estate. Consequently, the property at issue here is held free and clear of any claim of Donvito for a debt owed by William Criswell.

## SUMMARY

We overrule all of appellant's assignments of error and, for the reasons stated herein, affirm the judgment of the Court of Common Pleas of Summit County.

*Judgment affirmed.*

VICTOR, P.J., and BELL, J., concur.